UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> GUY FISHER, <br><br>               Defendant. | 83 Cr. 150 (PAC) |

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION TO REDUCE SENTENCE
<u>PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)</u>**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Kaylan E. Lasky
Assistant United States Attorney
    *Of Counsel*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ........................................................................................................................1

I.      Factual Background ...................................................................................................1

        A.      Underlying Conduct, Conviction and Sentence.......................................1

        B.      Procedural History ...................................................................................4

        C.      Incarceration and Compassionate Release Motion .................................4

II.     Legal Standards.........................................................................................................5

ARGUMENT ..............................................................................................................................7

III.    Fisher Has Not Met His Burden of Establishing "Extraordinary and
Compelling" Reasons for Compassionate Release .................................................7

a.      The Defendant's Medical Conditions / Age, and the COVID-19 Pandemic
Do Not Constitute an "Extraordinary and Compelling" Reason for
Compassionate Release.............................................................................................7

b.      Fisher's Rehabilitation is Not an "Extraordinary and Compelling" Reason
for Compassionate Release .....................................................................................11

IV.    The Section 3553(a) Factors Counsel Strongly Against Any Reduction in
Sentence ...................................................................................................................15

CONCLUSION.........................................................................................................................17

# TABLE OF AUTHORITIES

**Federal Cases**

*Dillon v. United States*, 560 U.S. 817 (2010) ................................................................ 6

*Fisher v. Miner*, 216 F. App'x 255 (3d Cir. 2007) ....................................................... 4

*Fisher v. United States*, 474 U.S. 819 (1985) ............................................................. 4

*Fisher v. United States*, 6 F. Supp. 2d 254 (S.D.N.Y. 1998) ................................ 2, 3, 4

*Hayden v. United States*, 814 F.2d 888 (2d Cir. 1987) .............................................. 1

*Rutledge v. United States*, 517 U.S. 292 (1996) ........................................................ 4

*United States v. Booker*, 13 Cr. 00050, 2020 WL 830054 (N.D. Ohio Feb. 20, 2020) ............................ 12

*United States v. Broadus*, 17 Cr. 787 (RJS), 2020 WL 3001040 (S.D.N.Y. June 4, 2020) ................. 7, 10

*United States v. Butler,* 18 Cr. 834 (PAE), 2020 WL 1689778 (S.D.N.Y. Apr. 7, 2020) ........................ 17

*United States v. Butler*, 970 F.2d 1017 (2d Cir. 1992) ............................................. 6-7

*United States v. Cantu-Rivera*, Cr. H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ................. 12

*United States v. Decker*, 17 Cr. 0738 (LAK), 2020 WL 3268706 (S.D.N.Y. June 17, 2020) .................... 8

*United States v. Ebbers*, 432 F. Supp. 3d 421 (S.D.N.Y. 2020) .................................. 10-11, 11

*United States v. Engles*, 790 F. App'x 961 (10th Cir. 2020) ..................................... 12

*United States v. Gileno,* 3:19 Cr. 161 (VAB), 2020 WL 1307108 (D. Conn. Mar. 19, 2020) .................... 8

*United States v. Haney*, 19 Cr. 541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) ........................ 9

*United States v. Henry*, 13 Cr. 91 (RRM), 2020 WL 3791849 (E.D.N.Y. July 6, 2020) .................. 12, 14

*United States v. Israel*, 05 Cr. 1039 (CM), 2019 WL 6702522 (S.D.N.Y. Dec. 9, 2019) ........................ 15

*United States v. James*, 11 Cr. 6160L, 2020 WL 3968587 (W.D.N.Y. July 14, 2020) ..................... 8-9, 9

*United States v. Lap Seng,* 15 Cr. 706 (VSB), 2020 WL 2301202 (S.D.N.Y. May 8, 2020) ............... 9-10

*United States v. Lisi*, 15 Cr. 457 (KPF), 2020 WL 881994 (S.D.N.Y. Feb. 24, 2020) ...................... 12, 15

*United States v. Martin*, 18 Cr. 834 (PAE), (S.D.N.Y. April 10, 2020), 2020 WL 1819961 .................. 17

*United States v. Millan*, 91 Cr. 685 (LAP), 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020) ............ 12, 13, 14

*United States v. Nwankwo*, 12 Cr. 31 (VM), 2020 WL 2490044 (S.D.N.Y. May 14, 2020) .............. 11-12

*United States v. Rice*, 83 Cr. 150 (LGS), 2020 WL 4505813 (S.D.N.Y. Aug. 5, 2020) .......................... 14

*United States v. Rodriguez*, 19 Cr. 12 (VSB), 2020 WL 2787629 (S.D.N.Y. May 28, 2020) ................. 10

*United States v. Sanchez*, 08 Cr. 789 (RJS), 2020 WL 2571074 (S.D.N.Y. May 21, 2020) ................... 11

*United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985) ..................................... 2, 3, 4

*United States v. Torres*, 87 Cr. 593 (SHS), 2020 WL 2815003 (S.D.N.Y. June 1, 2020) ................... 12-13

*United States v. Weeks*, 16 Cr. 167 (LAP), 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020) ...................... 12

*United States v. Wieber*, 14 Cr. 74 (TBR), 2020 WL 1492907 (W.D. Ky. Mar. 27, 2020)...................... 12

*United States v. Williams*, 06 Cr. 0143 (WMW/FLN), 2020 WL 614807 (D. Minn. Feb. 10, 2020) ....... 12

*United States v. Zullo*, 09 Cr. 64 (GWC), 2019 WL 7562406 (D. Vt. Sept. 23, 2019) ........................... 12

**Other**

U.S.S.G. § 1B1.13 ...................................................................................................................... *passim*

18 U.S.C. § 241 ................................................................................................................................... 2

18 U.S.C. § 1962 ............................................................................................................................. 1, 2

18 U.S.C. § 2241 ................................................................................................................................. 4

18 U.S.C. § 3142 ....................................................................................................................... 5-6, 15

18 U.S.C. § 3553 .................................................................................................................. 5, 7, 15, 17

18 U.S.C. § 3582 ............................................................................................................. 1, 4, 5, 6, 17

21 U.S.C. § 841 ............................................................................................................................... 1, 4

21 U.S.C. § 846 ............................................................................................................................... 1, 4

21 U.S.C. § 848 ............................................................................................................................... 1, 4

21 U.S.C. § 812 ................................................................................................................................... 1

28 U.S.C. § 994 .......................................................................................................................... 5, 6, 11

28 U.S.C. § 2255 ............................................................................................................................. 4, 5

## PRELIMINARY STATEMENT

Guy Fisher ("Fisher" or the "defendant") brings a motion (the "Motion") pursuant to 18 U.S.C. § 3582(c)(1)(A) for a reduction of his life sentence to time served. The Court should reject the Motion because Fisher's health conditions and rehabilitation do not rise to the level of extraordinary and compelling circumstances, and the Section 3553(a) factors counsel against the release of an individual who was a leader of a massive, murderous narcotics ring.

## BACKGROUND

### I. Factual Background

### A.      Underlying Conduct, Conviction and Sentence

In 1977, Guy Fisher and sixteen other defendants from the infamous narcotics enterprise known as the "Council," including Leroy "Nicky" Barnes, were indicted in this District for narcotics trafficking-related offenses. Ex. A, Pre-Sentence Report dated Jan. 10, 1984 ("PSR"), at p. 7; *Hayden v. United States*, 814 F.2d 888, 890 (2d Cir. 1987). At the 1977 trial, presided over by the Honorable Henry F. Werker, the jury returned a verdict of guilty as to Barnes (and other defendants), but failed to return a verdict with respect to Fisher. *Hayden*, 814 F.2d at 890.

In 1983, Fisher was again indicted in this District, this time along with seven other defendants, with various narcotics, firearms, and racketeering ("RICO") offenses. *Id.*; Ex. B, Indictment SS 83 Cr. 150 (MP). Barnes, who cooperated with the Government after the 1977 trial, testified as a Government witness at the 1983 trial. *Hayden*, 814 F.2d at 890. After a six-week jury trial before the Honorable Milton Pollack, Fisher was convicted of conspiring to violate narcotics laws, in violation of 21 U.S.C. § 846 (Count One); participating in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Count Two); distributing or possessing with intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) (Count 7); participating in a RICO conspiracy, in violation of 18 U.S.C. § 1962(c) (Count 13); and operating

a RICO enterprise, in violation of 18 U.S.C. § 1962(c) (Count 14). PSR, pp. 3-5; Ex. C, Verdict, dated Nov. 21, 1983, Tr. 5423:2-5424:15. Fisher was acquitted of conspiracy to murder government witnesses, in violation of 18 U.S.C. § 241 (Count 15). PSR at p. 5; Verdict Tr. 5424:9-15. Judge Pollack principally sentenced Fisher to life imprisonment on Count 2, to run concurrently to a fifteen-year sentence imposed on Count 7, and twenty-year sentences on Counts 13 and 14, to run consecutively to those imposed on Counts 2 and 7.[1]

As proven at the 1983 trial, Fisher was an "active and prominent . . . member[]" of "an extensive narcotics enterprise called the 'Council,' a governing body of drug dealers that purchased and sold pure heroin, as well as cocaine, PCP and marijuana," which included Barnes and others. In existence from approximately 1972 to 1983, the Council's "purpose was to pool the members' resources, share narcotics sources, allocate sales territories, adjudicate disputes among members and handle the narcotics business of jailed members." *United States v. Thomas et al.*, 757 F.2d 1359, 1362 (2d Cir. 1985). "Each Council member had a separate narcotics business and employed subordinates to dilute and distribute" narcotics. *Id.* After Barnes was incarcerated as a result of the 1977 case, Fisher assumed Barnes' role in providing wholesale quantities of pure heroin to the other Council members, and also "invested substantial amounts of monies in tax shelter real estate projects in Detroit . . . and in the Apollo Theater." *Id.*

The Council was a notoriously violent enterprise.[2] "Council members routinely approved the murders of those suspected of being potential witnesses against the Council or of people who had been insubordinate*." Id.* "Over the course of its violent history, the Council was responsible

---

[1] No sentence was imposed on Count 1. As of the date of filing, the parties do not have the transcript from Fisher's sentencing hearing.

[2] In addition to the predicate acts described above, trial evidence also reportedly included that Fisher and another individual "participated in the 'chain-saw' execution of two additional victims," and contemplated murdering one of the Assistant United States Attorneys involved in the 1977 case, Ex. D, Gov't's Sent. Submission, dated Jan. 11, 1984, at pp. 3, 5, and threatened to kill a witness's family if the witness testified against Fisher, *Fisher v. United States*, 6 F. Supp. 2d 254, 261 (S.D.N.Y. 1998).

for eight murders of suspected informants." *Fisher*, 6 F. Supp. 2d at 256. Fisher, in particular, "rose to a leading role in the Council in part due to his reputation for violence." PSR at p. 7. At trial, the Government presented evidence of nine murders and one attempted murder approved by Council members. Of these, Fisher personally executed four of the victims, as described below:

- Murders of Victims #1 and #2: The Council had *Fisher* ask Elmer Morris, a co-defendant with law enforcement connections, to determine if Victims #1 and #2 were informants. *Id.* at 13. Once confirmed, *Fisher* and another individual lured Victims #1 and #2 into an office in and shot them to death. *Id.* The bodies were wrapped in rugs and were left in an abandoned van. *Id.*

- Murder of Victim #3: The Council had *Fisher* ask Morris to determine if Victim #3 was an informant. *Id.* at 14. Once confirmed, *Fisher* and another individual shot Victim #3 "ten times at close range while the victim was sitting in his car. *Id.* According to the reports, [Victim #3] was shot at such close range that his shirt ignited and began to burn." *Id. Fisher* and the other individual dumped Victim #3's body near Columbia Presbyterian Hospital. *Id.*

- Murders of Victims #4 and #5: The Council voted that Victims #4 and #5, who had stolen approximately $50,000 from Fisher's girlfriend, should be killed, leaving the details of the murder to *Fisher*. *Id.* On *Fisher's* orders, two individuals shot Victim #4 on the street; *Fisher* and one of the shooters who killed Victim #4 subsequently shot Victim #5 inside a garage. *Id.*

The evidence at trial also included that the Council approved several murders that ultimately were not successful; for two of these, Fisher was particularly involved:

- Approved Murder #1: In 1977, the Council planned to murder a Government informant whose information had led to the arrests of Barnes and others. *Id.* at 14. *Fisher* planned to have poison placed in Judge Werker's courtroom pitcher near the witness stand when the informant was going to testify at the 1977 trial. *Fisher* instructed another individual to obtain the poison.[3] *Id.*

- Approved Murder #2: In 1983, after the defendants in the 1983 case were arrested and while remanded at the Metropolitan Correctional Center, they discussed a plan to have Barnes assassinated. *Id. Fisher*

---

[3] Fisher is alleged to have attacked the judicial system in other instances as well. In the 1983 trial, Judge Pollack permitted an anonymous jury based on, among other things, an affidavit from an Assistant United States Attorney stating that Barnes had informed the AUSA that Fisher had bribed a juror at the 1983 trial to obtain a hung jury. *Thomas*, 757 F.2d at 1363.

stated, in the presence of another inmate, that "he had arranged for a murder contract on Barnes' life and, through unnamed parties, had made a partial payment on that contract." *Id.* at 15.

**B.    Procedural History**

Following his conviction, Fisher filed an appeal with the U.S. Court of Appeals for the Second Circuit, which affirmed his conviction and sentence on March 11, 1985. *Thomas*, 757 F.2d at 1371. Fisher's petition for a *writ of certiorari* with the U.S. Supreme Court was denied on October 7, 1985. *See Fisher v. United States*, 474 U.S. 819 (1985).

In 1997, Fisher filed a motion pursuant to 28 U.S.C. § 2255, which was granted only to the extent that it sought to vacate Fisher's conviction on Count One, for conspiracy to distribute narcotics.[4] *Fisher*, 6 F. Supp. 2d at 263.

In 2000, Fisher filed a further petition pursuant to 28 U.S.C. § 2255, and sought authorization to file additional petitions at least three times, all of which were unsuccessful, regarding his challenge to the CCE conviction. *See Fisher v. Miner*, 216 F. App'x 255, 256 (3d Cir. 2007). In 2007, Fisher's motion pursuant to 18 U.S.C. § 2241 regarding his CCE conviction was denied, as was his appeal to the U.S. Court of Appeals for the Third Circuit. *See id*.

**C.    Incarceration and Compassionate Release Motion**

Fisher is currently serving his sentence at the medium security facility at Federal Correctional Institution Yazoo City, in Yazoo City, Mississippi ("FCI Yazoo City Medium"). Mot. at 20. Fisher's counsel emailed a request for compassionate release to the Warden at FCI Yazoo City Medium on July 10, 2020. Mot. at 2, n.1; ECF 79-1.

---

[4] Subsequent to Fisher's conviction and sentencing, the United States Supreme Court held, in *Rutledge v. United States*, 517 U.S. 292 (1996), that a narcotics conspiracy charged under 21 U.S.C. § 846 is a lesser-included offense of a CCE under 21 U.S.C. § 848. *See Rutledge*, 517 U.S. at 297–300. Accordingly, where a defendant is convicted on both charges for the same underlying conduct, one of the convictions should be vacated. *Id.* at 307.

On August 3, 2020, Fisher filed the instant Motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Fisher claims that his alleged "extraordinary rehabilitation, including exceptional remorse, educational accomplishments, good behavior, mentoring and community service," coupled with his health / age and the risks posed to his health by COVID-19, warrant a sentence reduction. Mot. at 14.

## II.  Legal Standards

The "compassionate release" statute, passed in 1984 and codified at 18 U.S.C. § 3582(c), provides limited circumstances under which a court may "modify a term of imprisonment once it has been imposed." Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a sentence, after considering the factors set forth in § 3553(a) to the extent that they are applicable, if the defendant can show that "extraordinary and compelling reasons warrant such a reduction," and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission."

Congress instructed the United States Sentencing Commission (the "Sentencing Commission") to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under the compassionate release statute], including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress included a specific instruction to the Sentencing Commission that is critical here: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

Consistent with Congress's mandate, the Sentencing Commission issued a policy statement and accompanying application notes under U.S.S.G. § 1B1.13. That policy statement provides that the Court may, after considering the § 3553(a) factors, reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* §

1B1.13(3). As relevant here, the accompanying application notes provide that "extraordinary and compelling reasons" exist under four circumstances:

A. the defendant has a serious medical condition, such as a terminal illness,

B. "(B) Age of the Defendant. — The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less";

C. the defendant's family circumstances have changed such that the defendant is the only available caregiver for a minor child or incapacitated spouse; or

D. "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

U.S.S.G. § 1B1.13 app. note 1.

With respect to rehabilitation, the application notes reinforce Congress's statement on the issue: "Pursuant to 28 U.S.C. § 994(t), *rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason* for purposes of this policy statement." U.S.S.G. § 1B1.13 app. note 3 (emphasis added). Because the governing statute requires that a ruling concerning compassionate release be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13 is binding on the Court. *See Dillon v. United States*, 560 U.S. 817, 826-27 (2010) (where Section 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).

As the moving party, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Broadus*, 17 Cr. 787 (RJS), 2020 WL 3001040,

at *2 (S.D.N.Y. June 4, 2020) (finding that the defendant "has not carried his heavy burden of demonstrating that extraordinary and compelling reasons merit a significant reduction in his sentence").

## ARGUMENT

Fisher's Motion should be denied. He has not met his burden to demonstrate extraordinary and compelling reasons, and the Section 3553(a) factors weigh heavily against his release.

### III. Fisher Has Not Met His Burden of Establishing "Extraordinary and Compelling" Reasons for Compassionate Release

Fisher primarily relies on his medical conditions / age, the ongoing COVID-19 pandemic, and his rehabilitative efforts as grounds for the Motion. Although Fisher does not expressly state which U.S.S.G. § 1b1.13 category he contends applies, under the only conceivably relevant categories, categories (B) and/or (D), the Motion fails.[5]

#### a. The Defendant's Medical Conditions / Age, and the COVID-19 Pandemic Do Not Constitute an "Extraordinary and Compelling" Reason for Compassionate Release

Fisher's arguments regarding his medical conditions, age, and the COVID-19 pandemic– either standing alone or considered together in conjunction with his rehabilitation arguments–do not compel the extraordinary remedy of a reduction of Fisher's life sentence.

The defendant primarily appears to seek relief under the catch-all category (D), concerning "Other Reasons" – arguing that he might be exposed to and contract COVID-19 while in prison, and that his age (73 years old) and various health condition make him particularly vulnerable to the virus.

---

[5] Fisher does not assert that a serious medical condition or family circumstances justify his release as contemplated by the categories (A) or (C) of U.S.S.G. § 1B1.13, respectively. Nor could he – nothing in the record suggests that the defendant's illnesses are terminal or that the defendant is unable to provide self-care within the environment of the correctional facility, and he separately describes no relevant family circumstances.

According to the Centers for Disease Control and Prevention (the "CDC"), some health conditions put an individual at higher risk from COVID-19 (the "Established High-Risk Factors"), while other health conditions "might" put an individual at higher risk (the "Potentially High-Risk Factors").[6] Although Fisher has several of the Potentially High-Risk Factors, he has none of the Established High-Risk Factors. Accordingly, the defendant's medical conditions and/or age do not constitute "extraordinary and compelling" reasons for relief. Fisher asserts the following medical conditions (Mot. at 13, 16-18):

- Hypertension: Hypertension is a Potentially High-Risk Factor. The defendant has hypertension, as most recently reflected in his medical records on December 17, 2019. Ex. E, Def's Medical Records, at 42. According to the CDC, approximately 45% of American adults have hypertension.[7] Courts have generally not considered hypertension to be an extraordinary and compelling circumstance. *See, e.g.*, *United States v. Decker*, 17 Cr. 0738 (LAK), 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020).

- Hyperlipidemia: The defendant has high cholesterol, 236 mg/dL as most recently reflected in his medical records on August 27, 2019. Def's Medical Records, at 45. Approximately 95 million American adults 20 years old and older have total cholesterol levels of higher than 200 mg/dL.[8] High cholesterol is not listed as a risk factor for COVID-19. Rather, it is "*[s]erious* heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies," which pose a risk. *See, e.g.*, *United States v. Gileno*, 3:19 Cr. 161 (VAB), 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (finding defendant's alleged medical conditions, high blood pressure, high cholesterol, asthma, and allergies, were "not sufficiently serious" to warrant compassionate release).

- Various pulmonary issues (pleural thickening and scarring, a previous instance of pneumonia, and punctured lungs):[9] While having "damaged or scarred lung tissue" is a Potential High-Risk Factor for COVID-19, the factor is insufficient to constitute an "extraordinary and compelling" reason justifying a reduced sentence. *See, e.g.*, *United States v. James*, 11 Cr. 6160L, 2020 WL 3968587, at *1 (W.D.N.Y. July 14, 2020) (finding punctured lung 13 years prior that was

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Aug. 20, 2020). The CDC's guidance was most recently updated as of August 14, 2020.

[7] https://www.cdc.gov/bloodpressure/facts.htm (last accessed Aug. 20, 2020).

[8] https://www.cdc.gov/cholesterol/facts.htm (last accessed Aug. 20, 2020).

[9] Fisher suffered punctured lungs from a motorcycle accident in 1975. PSR at p. 8.

noted in PSR "does not make him a high risk candidate to contract the COVID-19 virus").

- Age: The CDC's current guidance states that, "[a]s you get older, your risk for severe illness from COVID-19 increases," and it identifies individuals aged 85 or older as at the greatest risk.[10] Although the defendant is not in the age group identified by the CDC as being at greatest risk for severe illness from COVID-19 (85 years old or older), the Government acknowledges that the defendant is at higher risk for severe illness from COVID-19 because he is 73 years old.[11] The defendant's age alone, however, is insufficient to constitute an "extraordinary and compelling" reason justifying a reduced sentence. *See United States v. Haney*, 19 Cr. 541 (JSR), 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020) ("But if Haney's age alone were a sufficient factor to grant compassionate release in these circumstances, it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release and that would arguably have a devastating effect on a national community that is now itself so under stress.").

While the Government's is sympathetic to Fisher's concerns regarding COVID-19, he has not established that even the most serious of his health conditions fall into the category of illnesses that definitely increase his vulnerability to COVID-19. And, more generally, despite the defendant's assertions, the BOP has made significant efforts to respond to and to protect its inmates and staff from COVID-19, including at FCI Yazoo City Medium. See Mot. at 19-20). The BOP has, for example, suspended visitation and restricting inmate movements, designed to limit the spread of COVID-19. *See* BOP COVID-19 Action Plan: Phase Seven, https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp. *United States v. Lap Seng*, 15 Cr. 706 (VSB), 2020 WL 2301202, at *9 (S.D.N.Y. May 8, 2020) ("[T]he blanket claim that the structure of BOP institutions and BOP's programming are conducive to the spread of COVID-19 assumes that the spread of COVID-19 cannot be mitigated with the implementation

---

[10] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed Aug. 20, 2020).

[11] *Id.* (explaining that "the risk for severe illness from COVID-19 increases with age").

of BOP's action plan. [The defendant] does not provide support for this assertion and it is at best speculation that borders on hyperbole."). Due to these efforts, FCI Yazoo City Medium currently has only one confirmed COVID-19 case among inmates and six confirmed cased among staff.[12]

Relatedly, Fisher states that, if released, he would reside with family in Florida. Mot. at 12. There is no basis, however, to conclude the defendant would be less likely to contract COVID-19 while traveling to and residing in Florida than while remaining in a closed BOP facility that currently reports only one COVID-19 infection among inmates.[13] *See United States v. Ng Lap Seng*, No. S5 15 Cr. 706 (VSB), 2020 WL 2301202, at *10 (S.D.N.Y. May 8, 2020) (denying compassionate release motion where defendant "would be more at risk of contracting COVID-19 w[]ere he released and required to stay in his apartment in Manhattan than he would be by remaining in FCI Allenwood Low"); *United States v. Rodriguez*, 19 Cr. 12 (VSB), 2020 WL 2787629, at *6 (S.D.N.Y. May 28, 2020) (similar).

To the extent that the defendant seeks relief under category (B), concerning the "Age of the Defendant," although the defendant (i) is over 65 years old and (ii) has served at least ten years of his (life) sentence, the defendant does not qualify because he does not appear to be experiencing a "*serious* deterioration in physical . . . health because of the aging process." U.S.S.G. § 1B1.13, Application Note 1 (emphasis added). While the defendant's prison medical records show that he suffers from the conditions described above, the conditions are not sufficiently serious to warrant early release. *United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020) (stating that while category (B) "does not require a health condition to reach

---

[12] Additionally, lower than the numbers presented by defense counsel, the BOP indicates that seven inmates and ten staff members have contracted but recovered from COVID-19 at FCI Yazoo City Medium. https://www.bop.gov/coronavirus/ (last accessed Aug. 20, 2020).

[13] *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (listing 557,891 total cases in Florida as of Aug. 20, 202).

those extremes [of category *A)] before qualifying an older defendant for a sentence reduction, .

. . it does, at least, require the age-related deterioration to be 'serious.'"). *Compare* Medical

Records, Nov. 25, 2019 at p. 1 (Fisher "reported he has been exercising and eating healthy" and

has made "lifestyle changes to control his cholesterol without medications"), *with Ebbers*, 432 F.

Supp. 3d at 432 (granting compassionate release where 78-year-old defendant had been

hospitalized multiple times, his ability to care for himself was nearly gone, his cognitive

functions were impaired, and his body was wasting away). Furthermore, the defendant's ability

to provide self-care remains a factor – just not a *required* factor – under category (B). *Ebbers*,

432 F. Supp. at 428. Here, the defendant's medical records show that the defendant is able to

care for himself by consistently seeking, and receiving, medical intervention as needed.

For the foregoing reasons and those described below, Fisher has not established

extraordinary and compelling reasons warranting compassionate release.

### b. Fisher's Rehabilitation is Not an "Extraordinary and Compelling" Reason for Compassionate Release

Fisher's purported rehabilitation does not warrant a sentence reduction. As the defendant

correctly states, an inmate's rehabilitation alone cannot constitute an "extraordinary and

compelling reason," as a matter of law. Mot. at 14 n.8. This is the case because Congress has

directed by statute that "[r]ehabilitation of the defendant alone shall not be considered an

extraordinary and compelling reason." 28 U.S.C. § 994(t), and the Sentencing Commission's

binding policy note similarly states that "rehabilitation of the defendant is not, by itself, an

extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13

app. Note 3. Courts have overwhelmingly followed this directive. *See, e.g.*, *United States v.*

*Sanchez*, 08 Cr. 789 (RJS), 2020 WL 2571074, at *2 (S.D.N.Y. May 21, 2020) (denying

compassionate release motion based on only "purported rehabilitation"); *United States v.*

*Nwankwo*, 12 Cr. 31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020), (rejecting

defendant's argument that his rehabilitation presented an "extraordinary and compelling" reason, based on application note three); *United States v. Weeks*, 16 Cr. 167 (LAP), 2020 WL 1862634, at *3 (S.D.N.Y. Apr. 14, 2020), (finding defendant's rehabilitation efforts, however "admirable," "are not grounds for release," based on application note three); *United States v. Henry*, 13 Cr. 91 (RRM), 2020 WL 3791849, at *3 (E.D.N.Y. July 6, 2020) (rejecting defendant's rehabilitation argument, citing to application note three, and also rejecting defendant's other bases for early release); *United States v. Lisi*, 15 Cr. 457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020) (rejecting defendant's argument that his rehabilitation was an "extraordinary and compelling" reason, based on application note three).[14]

Fisher relies on primarily two cases in which courts have determined that a defendant's rehabilitation, either in conjunction with other factors or standing alone, merited a sentence reduction. Crucially, unlike the instant case, those cases involved defendants convicted of *non-violent* narcotics offenses.[15] *See United States v. Millan*, 91 Cr. 685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020) (granting motion solely on the basis of rehabilitation)[16]; *United States*

---

[14] *See also United States v. Engles*, 790 F. App'x 961, 962 (10th Cir. 2020) (rejecting same argument, writing "[a]s to Defendant's post-sentencing rehabilitation efforts, the United States Sentencing Guidelines explicitly state 'rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason' for a sentence reduction'"); *United States v. Wieber*, 14 Cr. 74 (TBR), 2020 WL 1492907, at *3 (W.D. Ky. Mar. 27, 2020) (rejecting same argument, and noting that "since the passage of the First Step Act, district courts around the country have continued to deny motions for release based solely on the rehabilitation of the defendant)"; *United States v. Williams*, 06 Cr. 0143 (WMW/FLN), 2020 WL 614807, at *2 (D. Minn. Feb. 10, 2020) (denying compassionate release because defendant's reasons "largely pertain to his rehabilitation while in prison, which both Congress and the [Sentencing] Commission have expressly excluded from the definition of 'extraordinary and compelling reasons"); *United States v. Booker*, 13 Cr. 00050, 2020 WL 830054, at *2 (N.D. Ohio Feb. 20, 2020) (rejecting same argument because "'rehabilitation of the defendant alone' cannot serve as the basis for compassionate release"); *United States v. Zullo*, 09 Cr. 64 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019) (rejecting the same argument–even though rehabilitation was "very successful"–because "rehabilitation is specifically excluded as an independent basis for compassionate release").

[15] Fisher also cites to *United States v. Cantu-Rivera*, another case in which it appears that the defendant was not accused of violence. Cr. H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) (granting motion on the bases of a serious deterioration in physical health from the aging process and rehabilitation).

[16] In addition, (1) the *Millan* court does not discuss the Sentencing Commission's binding policy guidance, U.S.S.G. § 1B1.13 app. note 3, or any of the cases cited in the above list.

*v. Torres*, 87 Cr. 593 (SHS), 2020 WL 2815003, (S.D.N.Y. June 1, 2020) (granting motion on the bases of susceptibility to COVID-19 due to health conditions and rehabilitation). Indeed, the court in *United States v. Millan* emphasized that the defendant was a "non-violent, first-time offender" who committed drug-trafficking crimes as an "immature and irresponsible" youth. *Millan*, 2020 WL 1674058, at *8; *see also id.* at *2. ("Mr. Millan's PSR contains no assertion or allegation that he (or anyone else associated with the [drug trafficking] organization) ever engaged in any acts of violence or trafficked in/used any weapons."). In contrast, the evidence presented at trial indicated that Fisher was a member of an organization that committed heinous crimes, and that he personally executed four victims.[17]

Also unlike in the instant case, the sentencing judge in *Torres*, then-District Judge John M. Walker, submitted a letter supporting the defendants' commutation petition. Similarly, in *Millan*, BOP staff were "unwavering their support for a reduction of [the defendant's sentence]." 2020 WL 1674058 at *9-*14. Although the support that Fisher has marshalled from friends, family, as well those who have never met Fisher, is commendable, it does not rise to the level of the defendants in *Torres* and *Millan*.

Finally, *Torres* and *Millan* cases are distinguishable because in those cases, the Government did not at all challenge the defendants' "factual narrative about rehabilitation." *Id.* at *9. Although Fisher's academic and other accomplishments (including earning a PhD and writing screenplays and books), clean disciplinary records, and community service are impressive, the Motion is deficient because it fails to meaningfully grapple with the true scope of Fisher's crimes. Fisher does not acknowledge, let alone express remorse for, the multiple victims that he murdered

---

[17] Fisher appears to argue that his acquittal on Count Fifteen and the lack of a special verdict, which would indicate of which predicates Fisher was found guilty, calls into question his violent conduct. The Government disagrees. Should the Court wish for briefing on the evidence presented at trial, it would respectfully seek additional time in order to collect trial records.

or the many more murders that he approved as a member of the Council. Rather, the Motion attempts to characterize Fisher as a "leader of a massive drug conspiracy." Mot. at 1; *see also id.* at 22-23 (stating Fisher "commit[ed] grave narcotics transgressions" and "spen[t] time in prison for selling drugs."); *see also* Fisher Letter, Def's Ex. D, ECF No. 79-4 (stating that Fisher "was convicted of drug related crimes"). Fisher expresses remorse for the "negative impact" he had on himself, his family, and the community as a whole, in a generalized sense, but does recognize those who died by his hand or those victims' families. (Fisher Letter, Def's Ex. D, ECF No. 79-4 at 2). Fisher's refusal to recognize the violent deaths or the scores of other individuals whose lives were surely devastated by the lethal drugs that the Council distributed for over a decade, undermines his claims of remorse. *See Henry*, 2020 WL 3791849, at *3 (finding that the defendant's "rehabilitation argument is undermined by the fact that Henry has never accepted responsibility for his offense and has continued to challenge aspects of his criminal case even after his post-trial motions and appellate arguments were roundly rejected").[18]

In sum, Fisher's rehabilitation argument is unavailing, and, in any event, Fisher has not adequately demonstrated that he has been fully rehabilitated. As described *supra* Section III(a), since Fisher's bases for compassionate release other than rehabilitation are entirely unavailing – either standing alone or considered together in conjunction with his rehabilitation argument – Fisher's case does not warrant the extraordinary remedy of early release.[19]

---

[18] After Fisher filed his Motion, the Honorable Lorna Schofield granted the compassionate release motion of Fisher's co-defendant, Wallace Rice. *See United States v. Rice*, 83 Cr. 150-3 (LGS), 2020 WL 4505813, at *2 (S.D.N.Y. Aug. 5, 2020). Rice's case is distinguishable from Fisher's namely because (i) at 87 years old, Rice is in the highest risk age category according to CDC guidance (*see supra*, p. 9); (ii) Rice's medical conditions include, among other things, lymphoma, which is an Established High-Risk Factor; and (iii) while Rice was also violent (the evidence at trial showed Rice shot one victim, who survived), "Fisher was the most prominent of the Council heads and may be considered slightly more culpable," PSR p. 15, and the evidence at trial showed Fisher murdered four victims (see *supra* p. 3).

[19] Even if "extraordinary and compelling reasons" warranted a reduction of Fisher's sentence, the Court could not grant a sentence reduction unless it determined that the defendant "is not a danger to the safety of any

#### IV. The Section 3553(a) Factors Counsel Strongly Against Any Reduction in Sentence

The Section 3553(a) factors counsel strongly against granting Fisher's Motion. The Sentencing Guidelines require a court to "consider[] the factors set forth in 18 U.S.C. § 3553(a)" in determining whether to grant compassionate release. U.S.S.G. § 1B1.13. Thus, even if a defendant establishes extraordinary and compelling reasons justifying compassionate release, the motion must still be denied if the Section 3553(a) factors counsel against release. *See, e.g.*, *United States v. Israel*, 05 Cr. 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) (explaining that court confronted with compassionate release motion must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances")*; Lisi*, 2020 WL 881994, at *6 (denying motion for compassionate release although "extraordinary and compelling" reason under catchall provision arguably existed—specifically, the medical condition of the defendant's mother—based on § 3553(a) factors because, *inter alia*, the defendant "continues to accept no responsibility for his crimes").

Here, the nature and circumstances of the offenses of conviction are among the most serious and reprehensible imaginable. The Council was a highly organized, complex organization whose drugs ravaged the community for more than a decade. And Fisher was particularly culpable – he was a prominent Council head, taking on an even larger role once Barnes was incarcerated following the 1977 trial. Moreover, at the 1983 trial, the Government's evidence showed that the

---

other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G § 1B1.13(2). Section 3142(g) directs the Court to consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Fisher does not acknowledge this required step in the analysis, and each of the § 3142(g) factors counsels heavily in favor of a life sentence, for similar reasons to those described with respect to the Section 3553(a) factors, *infra* Section IV.

Council approved multiple murders, with Fisher himself murdering four victims believed to be informants or those believed to have stolen money. Additional evidence at trial indicated Fisher's role in other heinous acts, including two chain-saw murders, and discussions regarding murdering an Assistant United States Attorney and poisoning a Government witness while the witness was sitting in the courtroom.

The history and characteristics of the defendant also counsel against granting his Motion. Besides the instant offense, Fisher has a significant prior record for which he served relatively little jail time: he was convicted of assault in the second degree and attempted rape in the first degree in 1965 (adjudicated a youthful offender); misdemeanor rape in 1965 (adjudicated a youthful offender); harassment in 1972; bribery of a public servant in the second degree as well as criminal impersonation as a misdemeanor in 1974; obstructing of governmental administration as a misdemeanor and disorderly conduct in 1980; and possession of a hypodermic instrument and unlawful possession of marijuana in 1981. PSR at pp. 20-22. Likely due in part to the Council's high degree of sophistication and organization, Fisher had no noteworthy prior narcotics convictions before the present offense. Also relevant to the characteristics of the defendant, Fisher's claim to be rehabilitated is undermined by his failure to acknowledge his violent conduct and weighs against granting his Motion.

Fisher's incarceration is also necessary in order to protect the public from further crimes. Given Fisher's criminal past, there is every reason to believe that Fisher would pose a danger to the safety of the community if released. In particular, the evidence at trial showed that Fisher harbored a demonstrated vendetta against those suspected of being Government informants. Accordingly, releasing him now could pose a danger to those whose cooperation with the Government contributed to his current incarceration.

In short, Fisher's life sentence appropriately addresses Fisher's serious criminal conduct, and the end of justice would not be served by releasing him now.[20]

## CONCLUSION

For the foregoing reasons, Fisher's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) should be denied.[21]

Dated: New York, New York
       August 21, 2020

                                    Respectfully submitted,

                                    AUDREY STRAUSS
                                    Acting United States Attorney for the
                                    Southern District of New York

                        By:    ____/s/_____
                                    Kaylan E. Lasky
                                    Assistant United States Attorney
                                    Tel.: 212-637-2315

cc:    Mark Gombiner, Esq. (via ECF)

---

[20] Other courts in this District have found that a § 3553(a) analysis required continued detention for defendants whose crimes were far less serious. *See, e.g.*, *United States v. Martin*, 18 Cr. 834 (PAE) (S.D.N.Y. April 10, 2020), 2020 WL 1819961 (denying motion for compassionate release for defendant serving 66-month sentence for RICO conviction based, in part, on § 3553(a) evaluation); *United States v. Butler*, 18 Cr. 834 (PAE), 2020 WL 1689778 (S.D.N.Y. Apr. 7, 2020) (denying motion for compassionate release in light of COVID-19 for defendant with asthma and heart condition where defendant was a danger to safety of others and had only served 15 months of 60 month sentence); *United States v. Credidio*, 19 Cr. 111 (PAE) (S.D.N.Y. March 30, 2020), Dkt. 62 (denying motion for compassionate release and reduction of sentence to home confinement in light of COVID-19 pandemic for 72-year old defendant sentenced in Feb. 2020 to 33 months' imprisonment because lengthy term of imprisonment was required for reasons given at sentencing).

[21] If the Court grants Fisher's motion, however, the Government requests that the Court order a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from Fisher to the public.