UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

UNITED STATES OF AMERICA                         :

                                                 :        1:83-cr-00150-PAC-1

       - against -                               :

                                                 :        **OPINION & ORDER**

GUY FISHER,                                       :

         Defendant.                              :

-------------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

       Defendant Guy Thomas Fisher ("Defendant," "Fisher") is a 73-year-old inmate at FCI

Yazoo City Medium ("FCI Yazoo City") who moves for a sentence reduction under 18 U.S.C. §

3582(c)(1)(A)(i).  Fisher has served 38 years of a life sentence without parole imposed in 1984

after his conviction on charges related to a sprawling narcotics conspiracy.  He argues that his

age, health conditions, and the danger posed to him should he contract COVID-19 while in

prison in conjunction with his decades of work to rehabilitate himself make him a candidate for a

sentence reduction.  Fisher also relies on his accomplishments while incarcerated, including

obtaining his G.E.D., graduating from college, getting a master's degree and receiving a

doctorate in sociology.  He has assisted other inmates as a tutor and mentor.  The Government

opposes the motion on the grounds that Fisher has not established "extraordinary and compelling"

reasons" permitting a sentence reduction, and that the gravity of his offenses counsel against

release.

       By his own efforts and the passage of decades, Fisher is no longer the 35-year-old drug

kingpin who was sentenced nearly forty years ago.  He has improved himself through education,

has helped others, and says he will use whatever time is left to him to guide young people away from crime.  He himself has stayed away from drugs and violence during his incarceration.  The men with whom he committed heinous crimes—which he undoubtedly did—are dead or like Fisher undone by time and fate.  His motion for compassionate release is GRANTED.

## BACKGROUND

Fisher was indicted in 1983 along with seven co-defendants in a 15-count, 45-page Indictment that charged criminal acts in connection with the "Council," a group of seven individuals who ran an extensive narcotics enterprise that operated in New York City from 1972 to 1983.  Dkt. 89, Ex. B; *United States v. Thomas*, 757 F.2d 1359, 1362 (2d Cir. 1985).  Fisher was charged with six counts:  narcotics conspiracy in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A) ("Count One"); operating a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)–(B), and 841(b)(5) ("Count Two"); distribution of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 ("Count Seven"); racketeering conspiracy in violation of 18 U.S.C. § 1962(c) ("Count Thirteen"); participation in a racketeering enterprise in violation of 18 U.S.C. § 1962(c) ("Count Fourteen"); and conspiracy to murder government witnesses in violation of 18 U.S.C. § 241 ("Count Fifteen").  Dkt. 84, at 6; Dkt. 89, Ex. B, at 1–43.

"The Council's purpose was to pool the members' resources, share narcotics sources, allocate sales territories, adjudicate disputes among members and handle the narcotics businesses of jailed members." *Thomas*, 757 F.2d at 1362.  "Each Council member had a separate narcotics business and employed subordinates to dilute and distribute the heroin in his territory.  The Council also dealt in cocaine, PCP, and marijuana.  Council members routinely approved the

murders of those suspected of being potential witnesses against the Council or of people who had

been insubordinate." *Id.*

Fisher's 1983 Indictment represented the second time he faced criminal charges in

connection with his activities as a leader of the Council—he was also indicted and tried in 1977

in a trial that resulted in prison terms for other Council members, but which ended in a hung jury

for Fisher.[1]  *United States v. Hayden*, 814 F.2d 888, 889–90 (2d Cir. 1987); *Thomas*, 757 F.2d at

1363.

A six-week jury trial was held on the 1983 Indictment before Judge Milton Pollack,

resulting, as relevant to Fisher, on guilty verdicts on five of the six counts against him, and a not

guilty verdict on Count Fifteen, charging conspiracy to murder government witnesses.  *Thomas*,

757 F.2d at 1361.  Fisher was sentenced by Judge Pollack to concurrent sentences of life

imprisonment on Count Two and 15 years on Count Seven, to run after the consecutive 20-year

sentences imposed on Counts Thirteen and Fourteen.  Dkt. 89, at 2; Sent'g Tr. at 19:2–22:9.

Three of Fisher's seven co-defendants—Frank James ("James"), Ishmael Muhammed[2]

---

[1] Among those convicted at the 1977 trial was Leroy "Nicky" Barnes ("Barnes"), a founding member of the Council.  *United States v. Barnes*, 604 F.2d 121, 130 (2d Cir. 1979).  Barnes was convicted on a conspiracy count, a continuing criminal enterprise count, and for possession and distribution of narcotics, and was sentenced to life imprisonment on the continuing criminal enterprise count.  *Id.* at 155–56.  Around 1982 Barnes began cooperating with the Government and his testimony contributed to the conviction of former co-members of the Council including Fisher.  *Hayden*, 814 F.2d at 890; *Reiter v. United States*, 371 F. Supp. 2d 417, 442 (S.D.N.Y. 2005).  Barnes, who had once been dubbed "Mr. Untouchable" by the metropolitan press, had his life sentence reduced based on his cooperation and died a free man in 2012.  Sam Roberts, *Nicky Barnes, 'Mr. Untouchable' of Heroin Dealers, Is Dead at 78*, N.Y. TIMES, June 8, 2019, https://www.nytimes.com/2019/06/08/nyregion/nicky-barnes-dead.html.

[2] A review of the Bureau of Prisons' "Inmate Locator" indicates that both James and Muhammed each appear to be have died more than a decade ago.

("Muhammed"), and Wallace Rice[3] ("Rice")—were also sentenced to terms of life imprisonment. *Thomas*, 757 F.2d at 1361.

Fisher's conviction on Count One of the Indictment for conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, for which no sentence was imposed, was subsequently vacated as a lesser included offense of 21 U.S.C. § 848, the Count Two CCE charge, *Fisher v. United States*, 6 F. Supp. 2d 254, 259 (S.D.N.Y. 1998), after the Supreme Court's decision in *Rutledge v. United States*, 517 U.S. 292, 307 (1996).

Fisher, who was 35 when he was sentenced, has spent the last 38 years in prison for his crimes. His fellow drug traffickers have died. For almost four decades, Fisher dedicated himself to his education, earned multiple degrees, and kept his distance from violence and drugs while maintaining family relationships and helping fellow inmates. Dkt. 84, Exs. E–J, S.

On August 10, 2020, in the context of the ongoing COVID-19 pandemic, Fisher moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 84. The Government opposed the motion, and the Court, upon review of the record and the Parties' submissions, ordered supplemental briefing on the trial record regarding the Council's violent conduct and the nature and extent of Fisher's participation in it. The Government and Defendant both made additional filings. Dkts. 93, 94.

---

[3] Rice was convicted of the same offenses as Fisher. *Thomas*, 757 F.2d at 1361. He is now 87 and was granted compassionate release by Judge Lorna G. Schofield in August of this year. *United States v. Rice*, 83 Cr. 150-3 (LGS), 2020 WL 4505813, at *1, 5 (S.D.N.Y. Aug. 5, 2020). Judge Schofield said that, "Even though he was convicted of and sentenced to very serious crimes almost forty years ago, the parties do not dispute that [Rice] has no record of violence during his thirty-seven plus years in prison and that, given [Rice's] advanced age and serious health problems, he is significantly less likely to recidivate." *Rice*, 2020 WL 4505813, at *4. The same may be said of Fisher.

## DISCUSSION

### I.     Compassionate Release Standard

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) provides a limited

exception to the general rule that "[a] court . . . may not modify a term of imprisonment once it

has been imposed absent statutory authority."  *United States v. Brady*, S2 18 Cr. 316 (PAC),

2020 WL 2512100, at *2 (S.D.N.Y. May 15, 2020).  The provision was modified by the First

Step Act of 2018 ("FSA") to permit a prisoner to move for compassionate release on his own

behalf "after . . . fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of

Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).

After this exhaustion requirement has been met, the Court may grant a sentence reduction

where "extraordinary and compelling reasons" warrant it.  18 U.S.C. § 3582(c)(1)(A)(i).  The

amendment of the compassionate release statute by the FSA "freed district courts to consider the

full slate of extraordinary and compelling reasons that an imprisoned person might bring before

them" when seeking a sentence reduction.  *United States v. Brooker*, No. 19-3218-CR, 2020 WL

5739712, at *7 (2d Cir. Sept. 25, 2020).  The court must also consider "the factors set forth in

[18 U.S.C. § 3553(a)] to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

### II.     Application

#### A. Exhaustion

Fisher applied for compassionate release with the warden of FCI Yazoo City on July 10,

2020 and argues that the 30-day exhaustion period ran as of August 9, 2020.  Dkt. 84, at 2 n.1.

The Government does not oppose the motion on exhaustion grounds.  The Court finds that the

exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) has been met.

5

### B.  Extraordinary and Compelling Reasons

Fisher submits that his age and medical conditions combined with the threat posed to him by COVID-19 in a carceral environment and the efforts he has undertaken to reform himself in prison all amount to "extraordinary and compelling reasons" that permit this Court to exercise its discretion and consider a sentence reduction.  Dkt. 84, at 7–13.  Fisher asserts that, apart from the danger posed to him by COVID-19 as an individual in his 70s, he has experienced thickening of the lining of his lungs, has had high blood pressure and cholesterol readings, has been diagnosed with hyperlipidemia, and suffers continuing damage from a lung puncture sustained in a 1975 motorcycle accident.  Dkt. 84, at 13.

The Government counters that Fisher's motion fails because he has not demonstrated that "extraordinary and compelling reasons" warrant a reduction in his case.  Dkt. 89, at 7–11.  The Government argues that Fisher's motion does not fit under U.S.S.G. § 1B1.13 comment n.1 (B) or (D), and so the Court should find that he has failed to establish an "extraordinary and compelling reason[] for purposes of 18 U.S.C. § 3582(c)(1)(A)(i).  The Government's approach of rigidly applying the categories in U.S.S.G. § 1B1.13, which has not been amended to recognize that a prisoner may now bring a motion on his own behalf, has not been the interpretation accepted by this Court or others in the Southern District of New York.  *See, e.g.*, *United States v. Jordan*, 1:19-cr-478-GHW, 2020 WL 4195353, at *3 (S.D.N.Y. July 16, 2020); *Van Praagh*, 2020 WL 3892502, at *3; *United States v. Morel*, 10 Cr. 798 (PAC), 2020 WL 3412907, at *2–3 (S.D.N.Y. June 22, 2020); *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020).  And after the Second Circuit's recent decision in *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712 (2d Cir. Sept. 25, 2020), the strict approach taken by the Government cannot prevail.  2020 WL 5739712, at *7 (holding that "[n]either Application Note

6

1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion").

Here, in addition to Fisher's age, which increases his risk of serious illness or death should he contract COVID-19, the Defendant has other medical conditions that while individually are not of the most grievous nature would in combination with Fisher's age stand to result in serious illness or death should he contract COVID-19 while in prison.  Finally, while the Government points out that rehabilitation of the Defendant "is not, by itself," sufficient to support a finding of "extraordinary and compelling reasons," here the Court finds that the sum of the Defendant's age, his other health conditions, and the dire and particularized risk posed to him should he contract COVID-19 in a prison facility, in combination with his exceptional rehabilitation efforts, constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).  *See Brooker*, 2020 WL 5739712, at *7–8; *United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) (finding an "extraordinary and compelling reason" where defendant sentenced to life imprisonment "assumed a positive attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

### C.  Section 3553(a) Factors

The Court therefore moves to consideration of whether the sentencing factors in 18 U.S.C. § 3553(a) permit a sentence reduction for Fisher.  They do. 18 U.S.C. § 3582(c)(1)(A) charges this Court with making an independent consideration of the 18 U.S.C. § 3553(a) factors—that is the procedure that Congress chose.  It allows room for judicial discretion, but no judge exercises that discretion lightly.

The Government contends that the "nature and circumstances of the offense," "history and characteristics of the defendant," and the need "to protect the public from further crimes of the defendant" are against a sentence reduction for Fisher.  The Court addresses each in turn.

### 1.  The Nature and Circumstances of the Offense

The Government in its opposition recounts violent acts of the most serious nature, including four murders that Fisher was said to have personally committed, three of which were listed as overt acts under Count One of the Indictment, and a fourth under Count Thirteen.  Dkt. 89, Ex. B, at 1–28.  The Indictment included allegations of discussing, conspiring toward, and attempting the murder of other individuals in pursuit of the Council's illegal aims.  Finally, Count Fifteen charged, among other offenses, that Fisher either directly acted or otherwise helped plan to murder government witnesses, and that he had at one time obtained poison that the Government says he intended to use on a testifying witness at trial.  Dkt. 89, Ex. B, at 43–45.

However, there were no special verdicts returned in this case and Fisher obtained an acquittal on Count Fifteen, the only count that required the jury to find that he had committed a violent act.  Dkt. 92, at 3–4.  As a result, the Court cannot know whether the jury thought the Government carried its burden of proof beyond a reasonable doubt on any of the murder allegations.  The jury may well have reached guilty verdicts on all the Counts on which Fisher was convicted without finding that he had engaged in any of the heinous acts of violence the Government describes.

This question was present at the time of Fisher's sentencing.  Sent'g Tr. at 4:12–6:2.  The Government's explanation in 1984 was that the jury must have acquitted on Count Fifteen because it found that the Government had not proven a murder within the five-year statute of limitations.  *Id.* at 16:13–17:10 ("[I]t is crystal clear . . . that that acquittal was based on a statute

of limitations problem."). But this is wholly the prosecutors' surmise. The Government also

argues, as it did in 1984, that Count Fifteen "only dealt with four of the ten murders we proved at

trial"—but again, there is nothing in the record indicating that the jury found the Government to

have carried its burden on any of the murders or other violent conduct alleged. Sent'g Tr. at

16:18–25; Dkt. 89, at 16. The sentencing judge did not say what weight he gave to the alleged

murders and other violent conduct when he imposed a life sentence on Count Two, the CCE

count.

    The same problems present themselves with the Government's accusations that Fisher

bribed a juror[4] to obtain an acquittal at his 1977 trial—conduct that was not charged in the

Indictment and of which he was not convicted. Dkt. 89, at 3 n.3. There is no evidence in the

record that this alleged conduct factored into Judge Pollack's decision to impose a life sentence

on the CCE count at sentencing in 1984.

    What is clear beyond contestation is that, whether it was with a gun or the drugs he sold,

Fisher stole away the lives of others. But he was aided in these acts by his co-defendants and

other members of the Council. If the Court looks to his co-defendants, as courts frequently do at

---

[4] The Government, in support of its motion for an anonymous jury at the 1983 trial (which was
granted), submitted an affidavit from an Assistant United States Attorney stating that former
Council leader Barnes "had informed the affiant that [Fisher] had bribed a juror" at the 1977 trial
that ended in a hung jury for Fisher. *Thomas*, 757 F.2d at 1362-63. "The affiant alleged that a
reliable informant told him that Fisher had paid the juror $25,000 to obtain a hung jury and that
Fisher had attempted to have witnesses killed." *Id.* These allegations made in 1983 of bribery in
1977 prompted habeas petitions on the basis of jury tampering from defendants who were found
guilty in that earlier trial. *Hayden*, 814 F.2d at 890. The district court judge—after permitting
depositions to be taken of Fisher and three other individuals purported to have information
regarding the alleged bribe—determined that the petitioners had not made a factual showing
sufficient to grant a full evidentiary hearing on whether there had in fact been any bribery. *Id.* at
890–91. The Second Circuit on review concluded that "[a]ll the testimony that a bribe occurred,
that a juror was approached, that she was offered money, and that money was accepted, is
contained in the statements of a confidential informant and is hearsay," and affirmed. *Id.* at 892.

sentencing, it becomes apparent that there is a danger of creating a disparity in sentencing here, where Fisher's co-defendant Rice, who was also convicted and sentenced by Judge Pollack to life imprisonment without parole on the same CCE count as Fisher, was granted compassionate release by Judge Lorna G. Schofield on August 5, 2020.[5]  *Rice*, 2020 WL 4505813, at *5.

Weighing all these considerations, the Court finds this factor to be somewhat against Fisher.

### 2.  The History and Characteristics of the Defendant

The prison door closed firmly behind Fisher in 1984, and yet for the next half of his life he rehabilitated himself "despite having . . . no realistic hope of release."  *Millan*, 2020 WL 1674058, at *8.  Fisher obtained his G.E.D. while incarcerated at U.S.P. Leavenworth in 1991 and then his bachelor's degree in 1993.  Dkt. 84, at 8.  He obtained a master's degree in 2006 and a doctorate in sociology in 2009.  *Id.*  But more important, he dedicated himself to helping others, earning a meritorious good time award in 2011 for his work as a tutor.  *Id.* at 9.  The Government acknowledges that Fisher's "academic and other accomplishments (including earning a PhD and writing screenplays and books), clean disciplinary records, and community service are impressive," but contends that Fisher should nevertheless not be granted a sentence reduction because his motion does not "express remorse for . . . the multiple victims that he

---

[5] Another court in the Southern District of New York recently granted a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for a 54-year-old inmate who, along with his co-defendant, ran a cocaine and heroin racketeering enterprise and who, unlike Fisher, was found guilty by a jury of having participated in the torture and murder of a government confidential informant.  *United States v. Rodriguez*, 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *1–2 (S.D.N.Y. Sept. 30, 2020).  Judge Jed S. Rakoff found that the defendant in *Rodriguez* had "undertaken extraordinary efforts at rehabilitation" that "weigh[ed] strongly in favor of a sentence reduction," and reduced the defendant's sentence from life to 30 years' imprisonment.  *Id.* at *6.

murdered or the many more murders that he approved as a member of the Council."  Dkt. 89, at 13–14.

Fisher submits numerous letters from friends and family who say they will help him adjust to society.  Dkt. 84, Exs. O–AA.  He lays out a release plan under which he will live with his sister and her husband at their home in Deltona Beach, Florida, and says he will spend his time working in his community and directing young people away from the life of crime he chose and for which he has paid a heavy price.  Dkt. 84, at 12.

Both Fisher's crimes and the regret he shows must be viewed from the present day, after 38 years of rehabilitation he undertook wholly for its own sake and without hope of relief. Furthermore, he was acquitted on Count Fifteen.  Fisher recognizes the damage he inflicted and expresses "remorse . . . for the negative impact I have had on myself, my loving family, my community, and society as a whole."  Dkt. 84, Ex. D, at 2.  He points to his educational accomplishments, which support a very positive conclusion concerning his rehabilitation.  And he wants to use what he has learned to mentor others and show that "an education can transition one[']s world-view and change the decision-making process for an individual such as myself." *Id.*  The letters from his friends and family show that he will be supported in his re-entry to his society and describe Fisher as a man who has continued to be active in their lives despite 38 years behind prison walls.

Fisher plans to spend his life after release "counseling young people to avoid his fate." Dkt. 84, at 22.  He has provided letters from individuals who say they will support him in these efforts.  *Id.* at 12.  If Fisher uses his remaining days in pursuit of these aims, he will have worked to heal the wounds he inflicted, made good use of the education he obtained in prison, and vindicated the chance provided by the compassionate release statute.

Together Fisher's considerable and sustained efforts to rehabilitate himself bespeak a changed man. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). These considerations tip this factor in favor of Fisher.

### 3.   The Need to Protect the Public from Further Crimes of the Defendant

Fisher's age and time removed from criminal activity, along with his clean disciplinary record, lessen the need for further specific deterrence or to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)–(C). Fisher's age makes the risk of recidivism extremely remote. *See Rodriguez*, 2020 WL 5810161, at *6 (observing that the defendant's release at the age of 60 would "mak[e] the likelihood of re-offending even more remote"); *Rice*, 2020 WL 4505813, at *5 (noting that the "[d]efendant's age make[s] recidivism unlikely"). These same considerations prompt the Court to conclude that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In short, granting compassionate release for Fisher during the COVID-19 pandemic does not undermine the sentence imposed for the crimes of which he was convicted. *Cf. Brady*, 2020 WL 2512100, at *3 (finding that a reduction "would provide an undue windfall that would severely undermine the goals of the sentence" the Court imposed). *See also Kosic*, 2020 WL 3100459, at *2 ("[C]ourts are looking to see . . . that releasing the prisoner early will not undo the important societal interest expressed in the imposed sentence.").

There is no evidence Fisher has engaged in violence or maintained his criminal activities in prison. Nor is there evidence that he has fostered a desire for revenge over his nearly four decades of incarceration. There is nothing to suggest that he has maintained his criminal

contacts and will exact reprisals if released.  In fact, many of his confederates, including Barnes,

who testified against him, have pre-deceased Fisher.  The great likelihood is that his reentry into

the world he left so long ago, and in which he caused so much harm, will be a lonely one.

       This factor, too, favors a reduction for Fisher.

## CONCLUSION

       Weighing all these considerations, the 38 years in prison Fisher has served are

"sufficient, but not greater than necessary" to recognize the seriousness of his crimes, promote

respect for the law, and provide just punishment.  18 U.S.C. § 3553(a)(1), (a)(2)(A).

       Fisher's motion for compassionate release is GRANTED, and his sentence is reduced to

time served.  Fisher will live at his sister's house in Deltona Beach, in the Middle District of

Florida.  Additionally, a term of supervised release of fifteen years is imposed, pursuant to 18

U.S.C. § 3582(c)(1)(A).  Fisher is to be supervised in the district of his residence.  He must

participate in an outpatient mental health treatment program approved by the United States

Probation Office as a condition of his supervised release.  Fisher must continue to take any

prescribed medications unless otherwise instructed by the health care provider.  He must

contribute to the cost of services rendered based on his ability to pay and the availability of third-

party payments.  The Court authorizes the release of available psychological and psychiatric

evaluations and reports, including the presentence investigation report, to the health care

provider.

Fisher will undergo a 14-day quarantine period and medical clearance prior to release to

minimize the possibility of any spread of COVID-19 from Fisher to the public.

The Clerk of Court is directed to close the motion at Dkt. 84.

Dated: New York, New York                     SO ORDERED
        October 9, 2020

_____

PAUL A. CROTTY
United States District Judge

14